*105 OPINION.
Arundell:
The petitioner admits receiving a profit of the difference between the cost of his Penn Oil Co. stock, $2,500, and the recorded selling price of it, $17,817.37. He says that this profit was realized in 1919, when he took over the property of the Philadelphia branch of the company. The respondent has placed the profit in income for 1920, the year in which a formal record of the transaction was made.
Sherwood had, in 1919, endorsed his stock and deposited it in escrow with his attorney. He took possession, in 1919, of the property which by the agreement he was to receive for his stock. He notified business men with whom he dealt that ho was no longer connected with the Penn Oil Co. He held himself out, to all who *106 might care to see, as the sole proprietor of the Philadelphia properties by effacing the name “Penn Oil Co.” from all pumps, tanks, etc., and painting thereon his trade name of “Sherwood Brothers.” Sherwood took physical possession of the property on October 1, 1919. According to the list of assets of the Philadelphia branch which was placed in evidence all of the property transferred was personal property, the company owning no real property there. His possession of the personal property pursuant to the agreement was recognized by the parties as valid. The parties having recognized the oral agreement as binding, it is not open to attack by the respondent in the absence of fraud or attempted evasion of taxes.
The meeting of March 1, 1920, was held merely in order to make a formal record of the transfer of property that had been made and because Sherwood and Himmelfarb desired to be fully protected in their possession of the respective properties. As we have pointed out above, Sherwood had the Philadelphia property and insofar as he was concerned the meeting held in 1920 was not necessary. As to Sherwood’s stock, while it was not delivered to Himmelfarb until 1920, the evidence shows that Sherwood considered that after he had indorsed it and turned it over to his attorney in 1919 he had nothing further to do with it and that he had surrendered it.
In view of the agreement between the holders of all the stock of the Penn Oil Co. and their subsequent acts, designed to carry it into effect, it is our opinion that an effective transfer took place in 1919, and the petitioner realized his gain in that year.
The remaining question is whether the Cottman account in the amount of $10,412.63, is a proper bad debt deduction for the year 1920. The facts with respect to this account do not convince us that the petitioner had determined it to be worthless in the taxable year. While the debtor had no property it appears that the petitioner had hopes of continuing his sales at the Cottman location which would naturally result in liquidation of at least part of the account. Then, too, it is worthy of note that during the remainder of the year, after the financial condition of Cottman had been ascertained, and until a lease on the property was secured in 1921, the petitioner continued to furnish supplies to the allegedly worthless debtor. It is difficult to square, such action with a claim that the account was ascertained to be worthless.
Judgment will be entered on 15 days’ notice, wider Bule 50.
Considered by LaNsdoN and StekNHaoeN.